OPINION OF THE COURT
Leon D. Lazer, J.
On December 19, 1967, Charles Hinton was seriously injured when the car which he was driving was struck by an automobile operated by Stanton Brannin. Brannin’s liability for Hinton’s grave injuries was so apparent that the Insurance Company of North America (INA) — which covered Brannin for liability to the extent of $50,000 on the accident — established a reserve of $45,000 for the case. On July 30, 1969, during the taking of depositions in the lawsuit that followed, Hinton’s lawyer declared for the record that his client would accept *79 INA’s policy limitíóf $50,000 in settlement of the action but the carrier made no effort to settle and Hinton obtained a summary judgment in his favor on the liability issue on October 24, 1969. When the damage issue was reached for trial on December 1, 1970, INA — for the first time — offered its policy limits in settlement of the action but Hinton responded that he would not accept the offer until he was satisfied that no additional insurance coverage was available to Brannin under a family automobile liability policy which INA had issued to the latter’s father. Although in actuality the father’s policy did not provide additional coverage for Brannin, INA made no effort to have it produced and the ensuing verdict in favor of Hinton resulted in the entry of á judgment in the amount of $165,400.48 against Brannin on December 18, 1970. INA then paid Hinton its policy limit of $50,000 leaving Brannin with an excess judgment against him for the difference.
Pursing recovery of the excess judgment, Hinton obtained the appointment of the instant plaintiff as receiver of Brannin’s assets. In the instant action, the receiver seeks to recover Brannin’s damages for INA’s alleged bad faith failure to settle Hinton’s case within the policy limits. At the trial, evidence adduced on the issue of Brannin’s damages revealed that when the accident occurred he was barely solvent — earning $150 per week — and that his meager assets were, and always have been, insufficient to satisfy the excess judgment. The only significant change in Brannin’s condition in the seven and one-half years which elapsed between the entry of the excess judgment and the current trial was his acquisition of an engineering degree.
During the course of the trial both the court and INA’s attorney were under the impression that Brannin had not filed a petition to discharge the excess judgment in bankruptcy. Nevertheless, INA argued that it should be permitted to raise the issue of a potential bankruptcy discharge before the jury as relevant to Brannin’s claimed damages. This contention was regarded by the court and the plaintiff as an effort to pose a mitigation question to the jury even though mitigation of damages had not been pleaded as an affirmative defense by INA (see CPLR 3018, subd [b]; Davis v Davis, 49 AD2d 1024). After in camera hearings on the issue, INA’s attorney was forbidden to question Brannin on the subject of bankruptcy or to mention it in summation. Ultimately, the *80 jury was charged that if it found INA guilty of bad faith it could consider Brannin’s entire ecomonic situation, past, present and future, in evaluating his damages. The jury rendered a verdict in favor of the receiver against INA in the sum of $176,217.30, representing the amount of the original excess judgment plus accrued interest.
THE CURRENT MOTION
INA has now moved to set aside the verdict on the ground that it is against the weight of the evidence and excessive, or in the alternative for judgment or for a new trial pursuant to CPLR 5015. Since INA’s attorney’s oral CPLR 4404 motion similar to the first branch of the current motion was denied immediately upon rendition of the verdict, only the alternative requests for relief will be considered here.
INA argues that it recently discovered that Brannin had filed a petition in bankruptcy in the United States District Court for the Western District of New York on January 21, 1977, more than a year before the instant trial. Conceding that the petition was a matter of public record from the date of. its filing in the Western District (where Brannin resided), INA contends it is entitled to judgment as a matter of law because of the filing or, in the alternative, to a new trial upon the grounds of newly discovered evidence and suppression of evidence, fraud and misrepresentation on the part of plaintiffs attorneys. INA’s attorneys assert that they assumed and they are "confident that the court assumed, that the answer to the [bankruptcy] question would have been in the negative. Plaintiffs counsel knew that the answer would have been in the negative [sic], yet they did not reveal that to the court.” Brannin’s bankruptcy schedule lists assets of $1,185 and debts of only $411 owed in 1976 taxes and the $165,400.48 balance due on the judgment. It is not claimed that Brannin was ever discharged in bankruptcy.
INA’S RIGHT TO RELIEF
To merit relief on the ground of newly discovered evidence (CPLR 5015, subd [a], par 2), the movant must show that the evidence is material, that it is not merely cumulative, that it is not of such a nature as would merely impeach the credibility of an adverse witness, that it would probably change the results if a new trial were granted and that the *81 evidence has been discovered since the trial and could not have been discovered earlier with due diligence (Mully v Drayn, 51 AD2d 660). It is essential to a CPLR 5015 (subd [a], par 2) motion to establish that the evidence was unavailable to the moving party in time to move for a new trial under CPLR 4404 (5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.07). Evidence which is a matter of public record is generally not deemed new evidence which could not have been discovered with due diligence (Daly v State of New York, 262 App Div 661, affd 288 NY 551; Mully v Drayn, supra; Seventh Ave. Delicatessen v Manhattan Provision Co., 146 NYS2d 25, aífd 1 AD2d 1037; Collins v Central Trust Co., 226 App Div 486) and relief is not available merely because a party failed adequately to prepare for trial (Grossbaum v Dil-Hill Realty Corp., 58 AD2d 593). Here, the failure of INA’s investigative service to ascertain the existence of the bankruptcy petition does not constitute a basis for relief in the form of a new trial. Since the alleged fraud and misrepresentation related to the concealment of the bankruptcy petition, evidence which was available to IN A, the allegation of fraud in the procurement of the judgment also is insufficient (see Central Funding Co. v Kimler, 54 AD2d 748; see, also, 755 Seventh Ave. Corp. v Carroll, 266 NY 157). However, the grounds enumerated in CPLR 5015 (subd [a]) were not intended to limit the traditional power of a court to grant relief from an order or judgment in the interests of justice and the exercise of its discretion (Government Employees Ins. Co. v Employers Commercial Union Ins. Co., 62 AD2d 123), and INA further asserts that the very existence of the bankruptcy petition entitled it to judgment dismissing the receiver’s complaint as a matter of law. Whether INA’s arguments are sufficient to compel an exercise of the court’s traditional power depends to a great degree upon the materiality of the evidentiary matter withheld to the issue determined. That materiality cannot be evaluated without examination of the rules by which damages must be ascertained in actions based upon the asserted bad faith of insurance carriers.
THE PAYMENT RULE
The earlier and now generally discredited view of damages in bad faith cases was that no damage existed unless the insured has paid and could pay the excess judgment or a portion of it, on the theory that actual pecuniary loss must be *82 shown (see State Auto. Mut. Ins. Co. of Columbus; Ohio v York, 104 F2d 730, cert den 308 US 591 [but see Lee v Nationwide Mut. Ins. Co., 286 F2d 295]; Transit Cas. Co. v Smith, 281 F Supp 661 [applying Texas Law], affd 410 F2d 210 [rule abandoned in Texas in Hernandex v Great Amer. Ins. Co. of N. Y, 464 SW2d 91]; Dumas v Hartford Acc. & Ind. Co., 92 NH 140, overruled in Dumas v State Farm Mut. Auto. Ins. Co., 111 NH 43). The payment rule has been criticized upon the grounds that the fullness of an insured’s purse is a poor measure of an insurer’s duty (Wolfberg v Prudence Mut. Cas. Co. of Chicago, 98 Ill App 2d 190) and that it provides a windfall to an insurer fortunate enough to have insured an insolvent and motivation for an insurer to be less responsive to its trust duties to such an insured (Brown v Guarantee Ins. Co., 155 Cal App 2d 679; Jenkins v General Acc. Fire & Life Assur. Corp., 349 Mass 699). According to the critics, damages in bad faith actions are analogous to those in personal injury actions where the plaintiff need only have incurred expenses and need not show that he has paid them (Jenkins v General Acc. Fire & Life Assur. Corp., supra; see 60 Mich L Rev 517).
THE JUDGMENT RULE
In most jurisdictions it is not necessary for the insured to allege that he has paid or can pay the excess judgment (see, e.g., Lee v Nationwide Mut. Ins. Co., supra; Wessing v American Ind. Co. of Galveston, Tex., 127 F Supp 775; Chitty v State Farm Mut. Auto. Ins. Co., 38 FRD 37; Alabama Farm Bur. Mut. Cas. Ins. Co. v Dalrymple, 270 Ala 119; Brown v Guarantee Ins. Co., 155 Cal App 2d 679, supra; Wolfberg v Prudence Mut. Cas. Co. of Chicago, supra; Henke v Iowa Home Mut. Cas. Co., 250 Iowa 1123; Sweeten v National Mut. Ins. Co. of D. C, 233 Md 52; Jenkins v General Acc. Fire & Life Assur. Corp., supra; Lange v Fidelity & Cas. Co. of N. Y, 290 Minn 61; Gray v Nationwide Mut. Ins. Co., 422 Pa 500; Southern Fire & Cas. Co. v Norris, 35 Tenn App 657; Ammerman v Farmers Ins. Exch., 22 Utah 2d 187; see 7 Am Jur 2d, Automobile Insurance, § 158, p 490-491; Ann. 63 ALR3d 627). Under this approach, as stated in Wolfberg v Prudence Mut. Cas. Co. of Chicago (supra, 197) ”[t]he very fact of the entry of judgment itself constitutes damage and harm sufficient to permit recovery * * * The rule of damages is that incurrence is equivalent to outlay.” The mere entry of the excess judgment is viewed as causing legal damage since it impairs credit, subjects the *83 insured’s property to the lien, diminishes his reputation and future prospects (see cases collected in Ann. 63 ALR2d 642). Thus, damage is said to occur when liability is fixed irrespective of whether the insured has paid the excess judgment or has the ability to pay it (Southern Fire & Cas. Co. v Norris, supra). Under the prevailing view, even insolvents (see Riske v Truck Ins. Exch., 490 F2d 1079, opp after remand 541 F2d 768; Smiley v Manchester Ins. & Ind. Co. of St. Louis, 13 111 App 3d 809) and bankrupts (Strand v Travelers Ins. Co., 300 Minn 311) have a cause of action and, regardless of the insured’s financial responsibility, the excess judgment is the measure of damages (Southern Farm Bur. Cas. Ins. Co. v Mitchell, 312 F2d 485; Smoot v State Farm Mut. Auto. Ins. Co., 299 F2d 525; Lee v Nationwide Mut. Ins. Co., 286 F2d 295, supra; Henke v Iowa Home Mut. Cas. Co., supra; Schwartz v Norwich Union Ind. Co., 212 Wis 593).
THE RULES IN NEW YORK
The judgment rule has been adopted in the First Judicial Department to the extent that actual payment of the excess judgment is held not to be a condition precedent to suit against a bad faith insurer. Thus, "An insurer which has been guilty of bad faith, one which has deliberately shackled its insured with the crippling jeopardy of a large excess judgment, may not insist that the insured must sacrifice his assets and pay the judgment before suit. The very nature of the risk insured against prohibits the imposition of such prerequisite.” (Henegan v Merchants Mut. Ins. Co., 31 AD2d 12, 13.) The Henegan court noted that to insist on prior payment would permit the insurer to take advantage of the financial status of its insured and deprive the ultimate beneficiary claimant of his judgment and concluded that damage and loss are sustained and the cause of action accrues upon the entry of the excess judgment.
Where the insured is judgment proof, however, Henegan is not dispositive and the rule to be applied seems obscure, more jurisprudence on the question being available from the United States Court of Appeals for the Second Circuit than from New York courts. In Harris v Standard Acc. & Ins. Co. (297 F2d 627, cert den 369 US 843), where the insured was insolvent before rendition of the excess judgment, paid none of it and subsequently obtained a bankruptcy discharge of the obligation, it was held that the insured was not harmed by the bad *84 faith actions of the insurer and the action was dismissed. Although Harris was followed by the Second Circuit in Bourget v Government Employees Ins. Co. (456 F2d 282 [construing Connecticut law]), in Young v American Cas. Co. (416 F2d 906, cert den 396 US 997) the court distinguished Harris from a situation involving insureds who were solvent before the excess judgment was rendered but who filed a petition in bankruptcy after having paid part of the judgment. In that situation, the measure of damages under New York law was deemed to be the full amount of the excess judgment.
The rule in Harris generally has been held applicable only where the insured was insolvent prior to trial (see, e.g., Anderson v St. Paul Mercury Ind. Co., 340 F2d 406; Jessen v O’Daniel, 210 F Supp 317, affd sub nom. National Farmers Union Prop. & Cas. Co. v O’Daniel, 329 F2d 60). It has been criticized by commentators on the grounds that it revives the discredited payment rule (see 60 Mich L Rev 517), that its assumption that an insolvent insured suffers no loss by reason of the excess judgment is contrary to fact, and that it opens avenues for the insurer to drive down the amount of a settlement without additional risk to it (7A Appleman, Insurance Law and Practice, § 4711 [Supp 1970]; see, also, 41 Tex L Rev 595). The Kansas Supreme Court explicitly rejected Harris (and Bourget) in Farmers Ins. Exch. v Schropp (222 Kan 612, 624) declaring: "We do not think that the prepayment rule serves the ends of justice, and decline to adopt it. On the contrary, we see no reason why the insolvency of an insured or his estate should excuse the insurer from exercising the same good faith it would be expected to exercise, were the insured fully financially responsible.” The Kansas court concluded that the bad faith action lies whether or not the insured has paid or can pay an excess judgment. This appears to be the majority rule in this country (see Wolfberg v Prudence Mut. Cas. Co. of Chicago, 98 Ill App 2d 190, supra, and cases cited therein).
Nevertheless, Harris still seems to enjoy some favor in this State. It was cited with apparent approval in Henegan for the "proposition that an insured is not damaged by an excess judgment where he was insolvent before the rendition of the judgment and, furthermore, was discharged in bankruptcy from paying the judgment” (Henegan v Merchants Mut. Ins. Co., 31 AD2d 12, 14, supra); it was cited in Judge Fold’s *85 concurring opinion and by the dissenters in Gordon v Nationwide Mut. Ins. Co. (30 NY2d 427, cert den 410 US 931.)
The concurring and dissenting opinions in Gordon contain the only guidance available from the Court of Appeals as to how damages should be evaluated where the assured is judgment proof or impecunious. The Gordon assured’s only asset was the eight-year-old car involved in the accident; he had been a gas station attendant without credit standing in the community, resided in a low rent area and disappeared during the pendency of the litigation. Although the Gordon majority affirmed dismissal of the action without reaching the damage issue, Judge Fuld’s concurrence cited Harris favorably and added that there was (p 441) "no proof that the insured suffered any damage.”
In an opinion written by Judge Breitel, the three Gordon dissenters devoted extensive attention to the damage issue. In their view, where a solvent insured is involved, the damages should be fixed as the amount of the excess judgment, but they also cite to Harris and Bourget for the proposition that an insured suffers no damage by virtue of an uncollectible judgment adding, however, that the rule in the latter situation is "evidently limited to insureds, dead and leaving no assets, or discharged in bankruptcy and insolvent at the time the excess judgment was rendered (see Young v. American Cas. Co., 416 F. 2d 906 [C. A., 2d], supra, involving a bankrupt, solvent at the time the excess judgment was recovered).” (30 NY2d 427, 450.) Where the insolvent insured does not subsequently file a petition in bankruptcy, the dissenters propose that damages be fixed by the jury on the basis of economic factors which they list. This proposal has been broadened by the drafters of Pattern Jury Instructions who suggest that the issue of damages be submitted to the jury in accordance with the rule in the Gordon dissent "[w]hen there is evidence that the insured was insolvent or had less assets than sufficient to pay the tort judgment at the time that the judgment was entered.” (2 PJI 4:67; emphasis supplied.) The PJI view also is consistent with the opinion in Peterson v Allcity Ins. Co. (472 F2d 71, 79-80) to the effect that: "The dicta in the opinions in Gordon suggest that realistically there is a distinction between a thoroughly solvent insured and one who while not technically insolvent, is of such meager means that a judgment in a comparatively large amount is practically worth something less than the face amount of the excess verdict. *86 Whether the theory of the plaintiffs action be in contract or in tort, the rule of actual or compensatory damages would appear to be the same — the plaintiff insured (or his representative or assignee) should only be entitled to recover to the extent that he has been or, in the reasonably foreseeable future, will be damaged by the outstanding judgment. In short, how much is the verdict against him worth. This is clearly the view of Judge Breitel’s dissenting opinion, joined in by Judge Burke and Gibson, and may well be the thrust of Chief Judge Fuld’s concurring opinion, although we cannot be sure.”
Where the assured has meager assets and is unable to pay the judgment, the Pattern Jury rule thus permits the jury to consider the age, economic status, economic prospects, skills, health, and any other matters presently existing which would be reasonably predictive of the insured’s economic future, or that of his estate if it were likely to receive assets or benefactions and to assess the pecuniary and tangible harm done to insured now and in the reasonably anticipated future by the overhanging excess judgment. It may also consider other tangible harms such as the loss of the right to operate motor vehicles or to obtain employment or insurance. The instant jury was charged in accordance with the PJI formulation.
In sum, then, the New York rule is threefold: (1) where the assured pays part of the judgment or is solvent enough to do so at the time of the excess judgment, the judgment rule applies and he is entitled to the full amount of the excess as his damages; (2) where he was insolvent before the judgment and obtained a bankruptcy discharge after it, he is not damaged and may not recover for it; and (3) where he was insolvent or nearly insolvent prior to the judgment the jury must consider his past, his prospects, and other economic factors and assess his damages.
Brannin’s situation fell within the ambit of the third phase of the New York rule: he was not insolvent but his limited assets rendered him nearly so. Under prevailing law, the fact that Brannin filed a petition in bankruptcy did not entitle INA to judgment as a matter of law as claimed. However, the jury, which was told to evaluate Brannin’s damages based upon the factors suggested by the Gordon dissenters and PJI, was not aware of the bankruptcy petition either. Whether the rulings, which excluded mention of bankruptcy or the alleged fraud or misrepresentation by the receiver’s attorneys, were *87 prejudicial to INA or likely altered the jury’s verdict in favor of the receiver still remains for determination.
BANKRUPTCY AS A DEFENSE UNDER THE NEW YORK RULE
In New York no recovery may be had for losses which might have been prevented by reasonable effort and expenditure (Wilmot v State of New York, 32 NY2d 164), although there is no duty to take extraordinary measures (Reichert v Spiess, 203 App Div 134; People's Gas & Elec. Co. v State of New York, 189 App Div 421; Salembier, Levin & Co. v North Adams Mfg. Co., 178 NYS 607; O'Connor v New York & Yonkers Land Improvement Co., 8 Misc 243). A plaintiff is not obligated to surrender a right of substantial value in order to minimize loss (Restatement, Torts, § 918, Comment j) or to institute and prosecute a lawsuit to accomplish the purpose (Lipshie v Lazarus, 235 NYS2d 764). Nor should a plaintiff be required to undergo a bankruptcy in order to benefit the wrongdoer who has caused his financial distress in the first place (see Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv L Rev 1136). To be compelled to seek a bankruptcy discharge under such circumstances may be a significant loss for the sensitive or those who have a reasonable likelihood of ever requiring credit (see dissent in Gordon v Nationwide Mut. Ins. Co., 30 NY2d 427, supra, see, e.g., Smoot v State Farm Mut. Auto. Ins. Co., 299 F2d 525, supra [construing Georgia law]; Southern Fire & Cas. Co. v Norris, 35 Tenn App 657, supra) and may constitute legal damage for which recovery may be sought (Anderson v St. Paul Mercury Ind. Co., 340 F2d 406, supra; cf. Colegrove v City of Corning, 54 AD2d 1093). Not only does a discharge in bankruptcy of an insured, solvent when the tort judgment was rendered, not bar recovery (Young v American Cas. Co., 416 F2d 906, supra), but it is common practice for bankruptcy trustees to act as plaintiffs in bad faith actions against insurers (see, e.g., Young v American Cas. Co., supra; Anderson v St. Paul Mercury Ind. Co., supra; Brown v Guarantee Ins. Co., 155 Cal App 2d 679, supra; Smith v State Farm Mut. Auto. Ins. Co., 278 F Supp 405).
Of further relevance to the final issues is the fact that an insurer’s liability for a bad faith failure to settle within the policy limits is ex delicto even though it arises out of a contract (Brown v Guarantee Ins. Co., supra; Southern Fire & Cas. Co. v Norris, supra; see Rutter v King, 57 Mich App 152) and most courts treat the action as sounding in tort rather *88 than in contract (Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv L Rev 1136; see, particularly, Harris v Standard Acc. & Ins. Co., 297 F2d 627, supra; Cohen v New York Prop. Ins. Underwriting Assn., NYLJ, Dec. 4, 1978, p 1, col 6), imposing a "duty” of good faith and fair dealing in third-party liability insurance contracts (45 Fordham L Rev 164, 177). In a tort action, the wrongdoer is answerable for all damages resulting directly from and as a natural consequence of his act (Steitz v Gifford, 280 NY 15) and the question of what are natural and proximate consequences of the misconduct is generally a jury question (Ehrgott v Mayor, Aldermen & Commonalty of City of N. Y., 96 NY 264). In at least one jurisdiction an insured has been awarded additional damages for mental distress (Crisci v Security Ins. Co. of New Haven, Conn., 66 Cal 2d 425) and punitive damages have been awarded in another (Campbell v Government Employees Ins. Co., 306 So 2d 525 [Fla]). The First Department seems to regard punitive damages as implicit in any third-party action based on an insurer’s bad faith performance of its duties (see Cohen v New York Prop. Ins. Underwriting Assn., supra).
From these principles it may be concluded that, while Brannin was under no obligation to render himself a bankrupt in order to limit INA’s liability to him, proof of the bankruptcy petition might have been offered by the receiver in an attempt to establish additional damages. How the exclusion of proof of additional damages, no matter by whom offered, could have prejudiced INA, has not been demonstrated in this record, nor has INA established any reasonable probability that the verdict of the jury would have been altered in its favor had that body been made aware of Brannin’s petition. In the totality of these circumstances and the law applicable to them, it must be concluded that granting the relief sought by INA would do nothing to promote the interests of justice and would constitute a futile exercise of discretion.
The motion is dismissed.