**ECONOMY FIRE & CASUALTY COMPANY, Appellant–Defendant,**

v.

**Martin D. COLLINS, Appellee–Plaintiff.**

No. 17A05–9304–CV–133.

Court of Appeals of Indiana, Fifth District.

Nov. 30, 1994.

Rehearing Denied Feb. 7, 1995.

Robert B. Clemens, George T. Patton, Bose McKinney & Evans, Indianapolis, for appellant.

Richard R. Bleeke, Sowers, Bleeke & Associates, Ft. Wayne, for appellee.

## OPINION

RUCKER, Judge.

This is a breach of contract action filed against Defendant–Appellant Economy Fire & Casualty Company (Economy) for failing to settle a claim within policy limits. A previous action arising out of an automobile collision resulted in an excess judgment against Economy's insured, John Terry. Subsequently, the insured's estate assigned to Plaintiff–Appellee Martin Collins (Collins) any claims it may have had against the company. Thereafter Collins sued Economy and Economy responded with two separate motions for summary judgment which the trial court denied. Economy perfected this interlocutory appeal from both motions raising two issues for our review which we rephrase as follows:

(1) Where an insurer breaches its contract of insurance and the breach results in a judgment in excess of policy limits, shall the insurer's liability extend to the entire excess judgment or shall the insurer's liability extend only to such sums that could have been collected from the insured.

(2) Whether Economy was entitled to summary judgment in this case because of defects in the judgment rendered in favor of Collins against the insured's estate.

We affirm.

On October 9, 1987, Economy issued automobile insurance to John Terry with a policy limit of $50,000.00. Three weeks later Terry drove his car into a car driven by Martin Collins. Terry died as a result and Collins

sustained personal injuries. An estate was opened on September 28, 1988 for Terry, and Collins filed his claim against the estate on December 6, 1988 for injuries arising out of the collision. Because Economy was the decedent's insurer, Collins proceeded to negotiate with the company's representative for settlement of the claim. Collins initially demanded policy limits but Economy offered considerably less. Economy rejected Collins' final demand of $42,500.00 countering with an offer of $25,000.00. On June 28, 1989, Collins filed suit against the estate and the case proceeded to trial by jury which returned a verdict for Collins for $386,155.01. Thereafter, Economy paid the $50,000.00 policy limits in partial satisfaction of the judgment, leaving an excess judgment of $336,155.01.

The personal representative for Terry's estate then entered into an assignment agreement with Collins which the probate court approved. In pertinent part the agreement provided:

1. Estate hereby assigns to Collins all of its rights and claims against the Economy Fire & Casualty Company, existing by reason of the negligence and bad faith of that insurer in failing and refusing to settle Collins' claim against Estate for the policy limits, by reason of which tortious conduct an excess judgment was rendered against Estate.

2. In consideration of this assignment, Collins agrees that he will not levy any further execution on, or in any other manner seek to enforce, the judgment against Estate but will exclusively attempt to recover the judgment balance due in an action against the insurer based upon this assignment.

*Record* at 17.

Armed with the assignment Collins filed a breach of contract action against Economy for failing to settle a claim within policy limits. Economy responded with its first motion for summary judgment based on two grounds: (1) that it had no duty to exercise good faith in attempting to settle a claim in order to avoid potential exposure to Terry's estate and, (2) that the assignment was inval-

id. The trial court denied the motion. Thereafter Economy filed its second motion for summary judgment on the grounds that any damages should be limited to the actual value of the assets in the insured's estate. The trial court denied that motion as well. This interlocutory appeal from both denials of summary judgment ensued in due course.

When reviewing the grant or denial of summary judgment, we stand in the trial court's shoes and consider the same matters it considered. *Board of Trustees of Hamilton Heights School Corp. v. Landry* (1990), Ind.App., 560 N.E.2d 102, *trans. denied.* We look to see whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Montgomery County Farm Bureau Co–Op Ass'n, Inc. v. Deseret Title Holding Corp.* (1987), Ind.App., 513 N.E.2d 193, *reh'g denied.* We do not rely upon the trial court's findings and conclusions and instead we base our decision upon the Rule 56(c) materials properly presented to the trial court. *DPF, Inc. v. Bd. of Comm'rs* (1993), Ind.App., 622 N.E.2d 1332, 1334, *trans. denied.* Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Houin v. Burger by Burger* (1992), Ind.App., 590 N.E.2d 593, *trans. denied.*

I.

Economy argues the trial court erred in determining the measure of damages to which Collins is entitled. According to Economy damages should be limited to the loss actually suffered by Terry's Estate. Economy also suggests that an insurer does not owe a duty to its insured to protect against an excess judgment where the insured is insolvent or where the insured's assets are not subject to execution.

■ Indiana has not yet addressed the issue of the measure of damages for an insurer's alleged bad faith breach of duty to settle a claim resulting in an excess judgment. There are generally two schools of thought. A majority of jurisdictions have adopted the "judgment rule," while a minority embrace

the "payment rule."[1] The payment rule dictates that an insurer may be held liable for a judgment in excess of policy limits only if part or all of the judgment has been paid by the insured. The underlying rationale here is that where an insured does not pay any money in satisfaction of an excess judgment, the insured is not harmed and thus may not collect damages. *Shapero v. Allstate Ins. Co.* (1971), 14 Cal.App.3d 433, 92 Cal.Rptr. 244. *Bourget v. Government Employees Ins. Co.*, 456 F.2d 282 (2d Cir.1972); *Levantino v. Ins. Co. of N. America* (1979), 102 Misc.2d 77, 422 N.Y.S.2d 995.

■ In contrast, the judgment rule provides that an insurer may be held liable for the entire excess judgment in instances of bad faith. Thus, the insured need not make any payment nor have the capacity to pay any part of the judgment in order to recover the excess amount from the insurer. *See e.g., Carter v. Pioneer Mut. Cas. Co.* (1981), 67 Ohio St.2d 146, 423 N.E.2d 188; *Wolfberg v. Prudence Mut. Cas. Co.* (1968), 98 Ill. App.2d 190, 240 N.E.2d 176; *Andrews v. Central Surety Ins. Co.*, 271 F.Supp. 814 (D.S.C.1967), *aff'd*, 391 F.2d 935 (4th Cir. 1968); *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d 1128, (D.C.Cir.1989); *Henke v. Iowa Home Mut. Cas. Ins. Co.* (1959), 250 Iowa 1123, 97 N.W.2d 168. The rationale behind allowing full recovery to an insured who has not paid the excess judgment is to prevent bad-faith practices in the insurance industry by eliminating the insurer's ability to hide behind the financial status of its insured. *See Southern Fire & Cas. Co. v. Norris* (1952), 35 Tenn.App. 657, 250 S.W.2d 785; *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dalrymple* (1959), 270 Ala. 119, 116 So.2d 924. Further, the judgment rule prevents an insurer from benefitting from poverty of an insured who has a meritorious claim but cannot first pay the judgment imposed upon him. If payment or demonstra-

tion of ability to pay a judgment were the rule, then an insurer may be encouraged to refuse to settle a claim merely because the insured is insolvent. Such a course of action would impair the use of insurance by the poor. *See Wolfberg v. Prudence Mut. Cas. Co.* (1968), 98 Ill.App.2d 190, 240 N.E.2d 176, 180. In addition, the judgment rule recognizes that the entry of judgment itself against an insured constitutes actual damage because it impairs the insured's credit, places a cloud on the title of an insured's exempt estate, impairs the insured's ability to apply for loans and damages the insured's reputation. *Carter v. Pioneer Mut. Cas. Co.* (1981), 67 Ohio St.2d 146, 423 N.E.2d 188; *Ammerman v. Farmers Ins. Exchange* (1969), 22 Utah 2d 187, 450 P.2d 460 citing, *Gray v. Nationwide Mut. Ins. Co.* (1966), 422 Pa. 500, 223 A.2d 8.

■ We agree with the majority of jurisdictions which have adopted the judgment rule.[2] As the court observed in *Norris*, 250 S.W.2d at 791, the prepayment rule allows a windfall to an insurer fortunate enough to have insured a person who is insolvent. The notion that an insured has not been damaged because he cannot pay the excess judgment is based on the fallacy that damaged credit and financial ruin are not injuries. *Id.* In contrast the judgment rule eliminates the insurer's ability to hide behind the financial status of its insured. Thus, the judgment rule is an effective means to address potential bad-faith practices in the insurance industry.

Further, the judgment rule is harmonious with Indiana law. This jurisdiction discourages insurance companies from rendering disparate treatment to insureds based upon their financial status. For instance, an insurance company may not issue a policy for liability insurance in Indiana unless "such policy [contains] a provision that the insol-

---

1. Sometimes referred to as the "prepayment rule." *See e.g., Farmers Ins. Exchange v. Schropp* (1977), 222 Kan. 612, 567 P.2d 1359; *Purdy v. Pacific Auto Ins. Co.* (1984) 157 Cal.App.3d 59, 203 Cal.Rptr. 524.

2. Some jurisdictions have adopted a compromise between the judgment and payment rule. The need to show partial payment is eliminated, but

collection on the judgment is precluded beyond what is or would actually be collectible from the insured. *Frankenmuth Mut. Ins. Co. v. Keeley* (1989), 433 Mich. 525, 447 N.W.2d 691, (Levin, J. dissenting), *dissent adopted on reh'g*, 436 Mich. 372, 461 N.W.2d 666 (1990). *See also Levantino v. Ins. Co. Of N. America* (1979), 102 Misc.2d 77, 422 N.Y.S.2d 995, 1002.

vency or bankruptcy of the person or persons insured shall not release the insurance carrier from the payment of damages." Ind.Code § 27–1–13–7. Also Indiana courts impose a duty on insurance companies to deal in good faith with their insureds. *Erie Ins. Co. v. Hickman by Smith* (1993), Ind., 622 N.E.2d 515; *Certain Underwriter's of Lloyd's v. Gen. Acc. Ins. Co.*, 909 F.2d 228 (7th Cir. 1990). Absent a duty of good faith, the insurer might consider only its own monetary interests in deciding whether or not to settle a third party's claim, ignoring the risk of an excess verdict on the insured. *Certain Underwriters*, 909 F.2d at 232. The judgment rule furthers this duty of good faith by forcing an insurer to act in the insured's best interests regardless of his financial status. Therefore, we adopt the rule which mandates that if an insurer engages in bad faith while failing to settle a claim, the insurer must compensate the insured or its assignees, regardless of financial status.

## II.

Economy also contends the trial court erred in denying its first motion for summary judgment. According to Economy, Collins' personal injury lawsuit against Terry's estate was not filed within five months of the first published notice of administration as provided by Ind.Code § 29–1–14–1(a). Thus, the argument continues, the untimely filing places the excess judgment beyond Collins' reach because the judgment represents an interest in the estate which may not be collected pursuant to the provisions of the forgoing statute which provide in part "[a]ny recovery against the tort feasor's estate shall not affect any interest in the assets of the estate unless the suit was filed within the time allowed for filing claims against the estate." I.C. § 29–1–14–1(f). In a related argument Economy also attacks the validity of the assignment agreement. According to Economy the assignment was illusory because Collins could not collect on the judgment.

■ Although intriguing, Economy's arguments must nonetheless fail. In sum Economy's attempt to raise the issue of the timeliness of the prior lawsuit is essentially an impermissible attack on the validity of the prior judgment. If a judgment is regular on its face it is not subject to attack unless the judgment was procured by fraud or unless the court entering the judgment lacked subject matter jurisdiction. *See In Re Chapman* (1984), Ind.App., 466 N.E.2d 777, *trans. denied; Deremiah v. Powers–Thompson Const. Co.* (1955), 125 Ind.App. 662, 129 N.E.2d 425, 428; *See Lucas v. Estate of Stavos* (1993), Ind.App., 609 N.E.2d 1114, *trans. denied* (plaintiff suing estate for wrongful death could not challenge validity of separate judgment adjudicating paternity of deceased's child where the plaintiff did not join in the action); *See Chapman*, 466 N.E.2d at 780 (grandparents' action seeking restraining order to prevent father from removing their grandchildren from the state was an impermissible attack on another court's judgment allowing their removal).

■ In this case the judgment rendered in the personal injury action is regular on its face and Economy does not contend that it was procured by fraud or that the court entering the judgment lacked subject matter jurisdiction. Economy may not now attack the validity of the judgment on the basis that the lawsuit was not timely filed. Because we adopt the judgment rule as the appropriate remedy for an insurer's alleged bad faith to settle, and because the judgment in the personal injury action is regular on its face, the trial court properly denied Economy's motions for summary judgment.

Judgment affirmed.

BARTEAU and SULLIVAN, JJ., concur.