## FOR PUBLICATION



**FILED**

Dec 27 2012, 9:24 am

**CLERK**

of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ADAM J. SEDIA**
Rubino, Ruman, Crosmer & Polen
Dyer, Indiana

ATTORNEYS FOR APPELLEE
PROGRESSIVE CASUALTY
INSURANCE COMPANY:

**J. THOMAS VETNE**
**BRIAN M. KUBICKI**
Jones Obenchain, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SLAVOJKA PISTALO, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1204-PL-214 |
| | ) | |
| PROGRESSIVE CASUALTY | ) | |
| INSURANCE COMPANY and | ) | |
| THE ESTATE OF IRIS M. WILKS, | ) | |
| DECEASED, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Jeffery J. Dywan, Judge
Cause No. 45D11-1107-PL-70

**December 27, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

In 2005, Slavojka Pistalo filed a personal injury action against Iris Wilks for injuries stemming from a 2003 vehicle collision. Wilks was insured by Progressive Casualty Insurance Company ("Progressive"), and Pistalo and Progressive began settlement negotiations. Unbeknownst to Pistalo, Wilks had died in the fall of 2003, and no estate had ever been opened. When Pistalo learned about Wilks's death two years later, her counsel opened an estate in Wilks's name for purposes of the personal injury action. Prior to trial, Pistalo offered to settle for policy limits, but Progressive refused.

Later, a jury found Wilks's estate liable to Pistalo in the amount of $309,000. Progressive paid the $100,000 coverage limits under Wilks's policy. Pistalo then filed proceedings supplemental, seeking to recover from Progressive approximately $325,000, the amount by which the entire damages award exceeded the policy limits, including prejudgment interest and attorney's fees. Unsuccessful, Pistalo then obtained from Wilks's estate an assignment of its rights against Progressive and filed a direct action against Progressive seeking a $333,600 excess judgment, which also included post-judgment interest. That action ended in a summary judgment in favor of Progressive.

Pistalo now appeals, claiming that the trial court erred in granting Progressive's motion for summary judgment and in impliedly denying her motion for summary judgment. Finding that summary judgment was inappropriate, we reverse and remand.

**Facts and Procedural History**

In February 2003, Pistalo was injured in a vehicle collision with Wilks, who was insured by Progressive. In January 2005, Pistalo filed a personal injury action against Wilks in Lake Superior Court ("Court I"). Pistalo and Progressive entered into settlement negotiations, but Progressive refused Pistalo's offer to settle for the $100,000 coverage limits of Wilks's policy. In November 2005, a representative from Progressive told Pistalo that Wilks had died in November 2003. Because no estate had ever been opened, Pistalo's counsel opened an estate in probate court ("Court II") in Wilks's name in January 2006, for purposes of substituting Wilks's estate as the party defendant in her personal injury action. William A. Padula, a colleague of Pistalo's counsel, was appointed special representative of Wilks's estate. Progressive did not challenge Padula's appointment as special representative.

In January 2006, Pistalo amended her complaint in the personal injury action, naming Wilks's estate as the party defendant. When the personal injury action finally went to trial in October 2009, Progressive defended the action on behalf of Wilks's estate. A jury found that Wilks had been 100% at fault and assessed damages at $309,000. Progressive paid the policy limit of $100,000 into court post-judgment. Court I subsequently found that Pistalo was entitled to $123,000 in prejudgment interest and $1000 in attorney's fees. Progressive paid the $1000 attorney's fee. The estate contained no assets other than the insurance policy, and Pistalo filed proceedings supplemental in Court I, seeking to recover from Progressive the entire remainder of the damage award, plus prejudgment interest, in excess of the policy limits. In an order dated June 17, 2010, Court I made the following findings:

1. On October 7, 2009, judgment was entered against defendant [Wilks's estate] in the sum of $309,000.

2. Pursuant to IC 34-50-1-1 et seq, [Pistalo] is entitled to fees, costs in the amount of $1000.

3. Pursuant to IC 34-51-4-8, [Pistalo] is entitled to prejudgment interest. An appropriate interest rate is 10% from July 11, 2005 to October 7, 2009 for a total amount of $123,600.

4. Progressive has never been a party to this action. There has never been a claim of bad faith made against Progressive with respect to this claim.

5. Therefore, Progressive's liability is limited to the amount of its policy limit of $100,000.

6. The $100,000 insurance proceeds shall be applied in partial satisfaction of the $433,600 judgment plus court costs.

Appellant's App. at 533-34.

After Court I ruled against Pistalo in the proceedings supplemental, Padula assigned to Pistalo the estate's rights against Progressive, asserting that the estate had a claim against Progressive for an excess judgment. Armed with the assignment, Pistalo then filed a direct action against Progressive in a different Lake County Superior Court ("Court III"), seeking the $333,600 excess judgment based on the insurer's alleged bad faith refusal to settle. Both parties sought summary judgment, and Court III granted Progressive's motion for summary judgment, finding that Pistalo had no claim to any estate assets beyond the insurance proceeds; that the limitation of Progressive's liability to $100,000 had already been litigated in proceedings supplemental; and that the assignment between the estate and Pistalo was invalid. *Id*. at 8-9. Pistalo now appeals. Additional facts will be provided as necessary.

4

**Discussion and Decision**

Pistalo contends that Court III erred in granting Progressive's motion for summary judgment and in impliedly denying her motion for summary judgment. We review a trial court's decision to grant or deny summary judgment using the same standard as the trial court. *Worman Enters., Inc. v. Boone Cnty. Solid Waste Mgmt. Dist.*, 805 N.E.2d 369, 373 (Ind. 2004). A motion for summary judgment is properly granted only when the pleadings and designated evidence reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Bank of New York v. Nally*, 820 N.E.2d 644, 648 (Ind. 2005). Our standard of review is not altered where the parties have filed cross-motions for summary judgment. *Indiana Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. Ct. App. 2000).

Here, Court III's summary judgment order included written findings and conclusions. We note that the trial court is not required to provide written findings and conclusions on summary judgment and that the conclusions are not binding on appeal, but they offer valuable insight into the trial court's rationale and thus facilitate our review. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 608 (Ind. Ct. App. 2008), *trans. denied*.

Pistalo claims that Court III erred in granting Progressive's motion for summary judgment on the issue of whether Progressive was liable for damages exceeding the $100,000

5

coverage limits of Wilks's policy.[1] She relies heavily on *Economy Fire & Casualty Co. v. Collins*, 643 N.E.2d 382 (Ind. Ct. App. 1994), *trans. denied* (1995), as support for her argument. In *Collins*, another panel of this Court affirmed an excess judgment against a deceased tortfeasor's insurer where the insurer asserted that it had no duty to exercise good faith in failing to settle the aggrieved party's claim and where the estate had assigned to the aggrieved party all of its rights against the deceased's insurer. *Id.* at 383. After engaging in an in-depth analysis of two common approaches to measuring damages in cases where an insurer's bad faith failure to settle a claim results in an excess judgment, the *Collins* court adopted the "judgment rule." *Id.* at 385. Under the judgment rule, an insurer may be liable for the entire excess judgment, despite its insured's lack of actual partial payment or the insured's lack of capacity to pay any part of the judgment.[2]

> The rationale behind allowing full recovery to an insured who has not paid the excess judgment is to prevent bad-faith practices in the insurance industry by eliminating the insurer's ability to hide behind the financial status of its insured. Further, the judgment rule prevents an insurer from benefitting from poverty of an insured who has a meritorious claim but cannot first pay the judgment imposed upon [her]. If payment or demonstration of ability to pay a judgment were the rule, then an insurer may be encouraged to refuse to settle a claim merely because the insured is insolvent. Such a course of action would impair the use of insurance by the poor.

[1] At the outset, we acknowledge Progressive's argument that Pistalo should be collaterally estopped from raising her claim for excess judgment based on bad faith failure to settle. However, we agree with Court I that the issue of bad faith was not litigated in the proceedings supplemental and that Progressive was not a named party. We also find that the estate's assignment to Pistalo of its rights against Progressive changed Pistalo's position vis-à-vis Progressive. Thus, collateral estoppel does not apply. *See Huber v. United Farm Family Mut. Ins. Co.*, 856 N.E.2d 713, 716 (Ind. Ct. App. 2006) (finding that to bar relitigation of issue, collateral estoppel requires final judgment, identity of issues, and same identity of party to be estopped), *trans. denied* (2007).

[2] The other approach, the "'payment rule,' dictates that an insurer may be held liable for a judgment in excess of policy limits only if part or all of the judgment has been paid by the insured." *Collins*, 643 N.E.2d at 385.

6

*Id.* (citations omitted).

Progressive correctly asserts that *Collins* is factually distinct with respect to the timing of the aggrieved party's claim against the tortfeasor's estate. There, Collins filed his claim within the applicable five-month statutory period and thus preserved a valid claim against estate assets. *Id.* at 384. Because Progressive contends that the timing difference commands a different result with respect to Pistalo's action for an excess judgment, we now address the extent of her statutory rights against Wilks's estate.

Courts I and III both concluded that because Pistalo filed her action after the expiration of the statutory time to file a claim against an estate, she could not recover any estate assets other than those encompassed within the insurance policy. *See* Ind. Code § 29-1-7-7(e) ("[A] claim filed under IC 29-1-14-1(a) more than nine (9) months after the death of the decedent is barred."); *see also* Ind. Code § 29-1-14-1(d) ("All claims barrable under subsection (a) shall be barred if not filed within nine (9) months after the death of the decedent."). However, both Courts also determined that Pistalo's recoverable damages against Progressive could not exceed the insurance policy's stated liability limit of $100,000. Pistalo argues that her recovery is not subject to Progressive's $100,000 policy limit because she filed her personal injury action within the timeframe for such actions. Indiana Code Section 29-1-14-1(f) states:

> Nothing in this section shall affect or prevent the enforcement of a claim for injury to person or damage to property arising out of negligence against the estate of a deceased tort feasor within the period of the statute of limitations provided for the tort action. A tort claim against the estate of the tort feasor may be opened or reopened and suit filed against the special representative of

7

the estate within the period of the statute of limitations of the tort. Any recovery against the tort feasor's estate shall not affect any interest in the assets of the estate unless the suit was filed within the time allowed for filing claims against the estate. The rules of pleading and procedure in such cases shall be the same as apply in ordinary civil actions.

While the statute lacks clarity with respect to harmonizing the various limitations periods for bringing claims, we find Justice Boehm's explanation in *Indiana Farmers Mutual Insurance Co. v. Richie* to be helpful:

> [T]he most practical reading of [subsection (f)] is that a tort suit may be instituted at any time within the applicable tort limitation period …. By adding subsection (f), the legislature clearly intended to exempt tort actions for liability insurance proceeds from the requirements of the probate code. This seems to make eminent sense. The statute makes clear that the administration of the estate cannot be disturbed by a Johnny-come-lately tort suit because such a suit cannot reach the assets of the estate. If that is the case there seems to be no reason why a suit involving only insurance proceeds should not proceed as a normal tort suit uncomplicated by the Probate Code. Moreover, the second sentence of subsection (f) must be read in conjunction with the first. The first sentence clearly states that "nothing in this section shall affect or prevent the enforcement of a claim for injury...." Subsection (f) is among the things in "this section." Accordingly we conclude that the only requirement that Indiana Code § 29-1-14-1(f) imposes on a tort action seeking liability insurance proceeds is that the suit be filed within the tort statute of limitations.

707 N.E.2d 992, 995 (Ind. 1999).

Because Pistalo did not file a claim within the nine-month timeframe allowed for filing claims against Wilks's estate, she could not disturb the distribution of estate assets, had there been any. Nevertheless, because she filed her tort action within the statute of limitations for a personal injury claim, she is entitled to recover from Progressive whatever sums Progressive owed to Wilks's estate as Wilks's insurer. In other words, Progressive not only was obligated to insure Wilks for the $100,000 policy limit, but it also owed Wilks

8

pursuant to that insurance policy an obligation to exercise good faith in handling Pistalo's claim against her.

Included in that good faith obligation was Progressive's duty to avoid exposing Wilks's estate to excess liability by refusing to settle for the policy limits. If Progressive failed to act in good faith, it risked liability to the estate for any excess judgment against it. *Collins*, 643 N.E.2d at 385. In that event, Progressive's total obligation would include not only the policy coverage limit, but also the amount of any excess judgment.[3] We are unaware of any compelling policy reason to condition the availability of the bad faith claim against Progressive upon the subsequent liquidity of Wilks's estate. To do so would not serve the purpose of promoting good faith bargaining by liability carriers. In its proceedings supplemental order, Court I found that Pistalo owned a judgment of $309,000 (less $100,000 paid) and was entitled to prejudgment interest and attorney's fees, but not from Progressive in that forum, because she had neither named Progressive as a party nor established a bad faith claim against Progressive. Thus, as a judgment creditor of the insured tortfeasor's estate, Pistalo needed a procedural mechanism for pursuing an excess judgment directly from the insurer. She accomplished this by obtaining an assignment from Wilks's estate. *See id.* at 386 (adopting judgment rule, which "mandates that if an insurer engages in bad faith while failing to settle a claim, the insurer must compensate the insured *or its assignees*, regardless of financial status.") (emphasis added).

---

[3] It is important to note that at the time Progressive committed the alleged bad faith, the liquidity of Wilks's estate had not yet been established.

9

Pistalo contends that as an assignee, she obtained all rights that Wilks's estate had against Progressive as Wilks's insurer, including the right to the $333,600 excess judgment. The assignee of rights under a contract stands in the shoes of the assignor and can assert any rights that the assignor could have asserted. *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). "A valid assignment gives the assignee neither greater nor lesser rights than those held by the assignor." *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, PC*, 929 N.E.2d 838, 848 (Ind. Ct. App. 2010) (citation and quotation marks omitted), *trans. denied*.

Progressive challenges the validity of the assignment on grounds of lack of consideration.[4] We note that it is generally inappropriate for courts to inquire into the adequacy of consideration. *Stainbrook v. Low*, 842 N.E.2d 386, 397 (Ind. Ct. App. 2006), *trans. denied*. Moreover, it is questionable whether Progressive, as a stranger to the assignment, has standing to raise such an inquiry. Nevertheless, we choose to address Progressive's argument.

---

[4] Progressive also asserts that Padula lacked authority to execute an assignment due to his position as a special representative, not a personal representative. A special representative is a type of personal representative who is appointed for a special purpose "with limited powers and duties [and who] is responsible to the estate only for that portion of its affairs entrusted to [him]." *In re Estate of Hutman*, 705 N.E.2d 1060, 1063 (Ind. Ct. App. 1999) (citation and quotation marks omitted). In cases where the party defendant dies during the pendency of personal injury proceedings, "only a special representative—in contrast to a personal representative to administer the estate's assets and liabilities—needs to be appointed." *Richie*, 707 N.E.2d at 995 (quoting 1 HENRY'S INDIANA PROBATE LAW § 804, at 339-40 (8th ed. 1989)). In other words, the special representative is appointed to "satisfy[] the somewhat metaphysical notion that a suit cannot proceed against a decedent." *Id*. Here, Padula's "portion of estate affairs" consisted of matters relating to Pistalo's personal injury action against the estate. The assignment to Pistalo was part of that portion of affairs because it avoided any attempt by Pistalo to execute on her judgment against the estate. As such, Padula did not act beyond his limited powers and duties in entering into the assignment with Pistalo.

An assignment is a contract and therefore is subject to the requirement that it be supported by consideration. *Interstate Fin. Corp. v. Dodson*, 105 Ind. App. 513, 518, 12 N.E.2d 989, 991 (1938).

> Consideration is defined as a benefit to the party promising, or a loss or detriment to the party to whom the promise is made. A benefit is a legal right given to the promisor to which the promisor would not otherwise be entitled. A detriment is a legal right the promisee has forborne.

*Warner v. Estate of Allen*, 776 N.E.2d 422, 428 (Ind. Ct. App. 2002) (citations and internal quotation marks omitted), *trans. denied* (2003).

Here, Pistalo had a judgment against Wilks's estate, and the estate had rights against Progressive as Wilks's insurer. Under the terms of the assignment, the estate gave Pistalo its rights against Progressive in exchange for Pistalo's promise to forgo executing on her judgment against Wilks's estate. The fact that the estate had no assets goes to the *collectability* of the judgment, not the *right* to execute on the judgment against the estate. This is precisely what the *Collins* court was emphasizing when it found that a lack of collectability on the judgment against the estate did not render the estate's assignment to the aggrieved party illusory. 643 N.E.2d at 386. Simply put, the assignment between Pistalo and Wilks's estate was supported by valid consideration.

In sum, tortfeasor Wilks purchased $100,000 in coverage from Progressive, and Progressive refused to settle with Wilks's aggrieved party Pistalo for the $100,000 policy limit when given the opportunity to do so. Post-judgment, Progressive paid Pistalo $100,000, plus $1000 in attorney's fees. By refusing to settle, Progressive placed its insured at risk of incurring a judgment for an amount exceeding the policy limits. As such, the $333,600

11

excess judgment Pistalo now seeks was part of Progressive's bargained-for risk based on its duty to act in good faith with respect to its insured. In the proceedings supplemental, Court I found that Pistalo had neither made a claim of bad faith against Progressive nor named Progressive as a party. However, once Pistalo obtained the assignment from Wilks's estate, she was in a position to file a direct action against Progressive for the entire amount of its obligation to the estate based on its alleged bad faith refusal to settle for the policy limits.[5] If bad faith is established, Progressive's obligation to Pistalo will include not only the stated policy limits, but also the amount of the excess judgment. Because the issue of whether Progressive acted in bad faith has not been established in the designated materials as a matter of law, we conclude that summary judgment was inappropriate. Accordingly, we reverse and remand for proceedings consistent with this decision.[6]

Reversed and remanded.

RILEY, J., and BAILEY, J., concur.

---

[5] "To prove bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability." *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002).

[6] While we appreciate the vigorous advocacy of counsel for both parties, we caution counsel that the aggressive and sarcastic tone of the arguments in their briefs serves no productive purpose.