**In re Matter of the ESTATE OF James Anthony HUTMAN, Deceased,**

**Lori Hutman, Appellant–Petitioner,**

**v.**

**Rita Hutman, Appellee–Respondent.**

**No. 64A03–9805–CV–242.**

Court of Appeals of Indiana.

Feb. 17, 1999.

F. Joseph Jaskowiak, Jack A. Kramer, Hoeppner, Wagner & Evans, Merrillville, Indiana, Daniel R. Berning, Berning & Berning, Valparaiso, Indiana, Attorneys for Appellant.

Nick Katich, Lucas, Holcomb & Medrea, Merrillville, Indiana, Attorney for Appellee.

## OPINION

GARRARD, Judge.

### Case Summary

Lori Hutman ("Lori") appeals an order denying her motion to dissolve the special administration of the estate of her late husband, James Hutman ("Decedent"). We affirm.

### Issues

Lori raises two issues for our review which we consolidate and restate as: whether the trial court's refusal to dissolve the special administration of Decedent's estate was proper. Rita Hutman ("Rita") disagrees with Lori's arguments and further contends that the denial of the petition to dissolve her appointment as the special administrator is not an appealable issue.

### Facts and Procedural History

Decedent died in an industrial accident on December 19, 1997 and was cremated three days later. On December 29, 1997, Decedent's mother, Rita, filed a petition to have herself appointed as the special administrator for the sole purpose of collecting damages for the wrongful death of Decedent and for worker's compensation benefits. In the peti-

tion, Rita stated that Decedent's dependents included three minor children by a previous marriage and a second childless spouse and that no estate had been opened yet. She alleged that as the natural grandmother of a majority of Decedent's dependents, she would be a suitable person to pursue the wrongful death claim. The court granted her petition that day.

The next day, Lori filed her objection to Rita's appointment and her petition to have herself substituted as the special administratrix. On January 20, 1998, Lori had herself appointed as the general administrator of Decedent's estate and also filed a petition to have the special administration dissolved. In its order denying Lori's petition to dissolve the special administration, the trial court found:

> 10. . . . [T]he issue focuses on the language of subsection (b) of the statute, which reads as follows: "a special administrator may be appointed by the court if . . . (b) Before the expiration of the time allowed by law for issuing letters, any competent person shall file his affidavit with the clerk that . . . there is no one having authority to take care of (the estate)."
>
> 11. [A]n examination of the pleadings reveals that Rita had searched the clerk's records to determine whether there was anyone else with court authority to take care of the decedent's estate. There was not.
>
> 12. . . . Lori argues that narrowly interpreting the statute to mean someone with court authority to handle the estate results in a race to the courthouse in order to obtain such authority. She suggests instead that, at the time Rita filed her petition, Lori, as surviving spouse, "would have authority to take care of" the estate of [Decedent]. She bases this argument on the fact that under the general administration statutes she would be a preferred person to be named personal representative. She acknowledges, however, that the general administration statute is separate and distinct from the special administration statute. Also, even under the general administration statute the statutory preferences are not mandatory. Any interest-

ed person may petition for authority to administer an estate I.C. 29–1–7–4. Neither Rita nor Lori could presume on December 29, 1997 that Lori had "authority" to handle the decedent's estate.

> 13. . . . Lori also suggests that a special administrator may only be appointed upon a showing of "urgent necessity." While this may be true in other jurisdictions, our legislature has not included such a requirement in our special administration statute.
>
> 14. . . . Rita's appointment was valid. Accordingly, Lori's petition to dissolve the special administration must fail.

Record at 30–31. Lori appeals from the above order.

### Discussion and Decision

■ Because Rita's argument could be dispositive of the case, we address it first. Rita points out that Indiana Code Section 29–1–10–15 precludes an appeal of Rita's appointment in the first instance. Rita contends that by filing a petition to have the special administration dissolved, and by appealing the denial of that petition, Lori seeks to accomplish the same thing "through the back door—i.e. having this Court determine whether Rita's appointment was appropriate." Rita's brief at 14. Thus, Rita argues that we should dismiss the appeal.

Recently, we addressed almost the exact issue. *See Pope by Smith v. Pope*, 701 N.E.2d 587 (Ind.Ct.App.1998). In *Pope*, the decedent died intestate leaving his five-year-old son as his only heir. The decedent's sister petitioned for, and was granted, letters of special administration for the sole purpose of pursuing a wrongful death action. *Id.* at 588. The mother of the five-year-old petitioned to close the estate or alternatively, to remove the sister and substitute herself as the special administratrix. After the mother's petition was denied, the mother appealed. *Id.*

On appeal, we considered whether the mother had the right to appeal the trial court's refusal to remove the sister as the special administratrix. We concluded: "While the initial appointment of a special administratrix is not subject to appeal, a special administratrix remains under the au-

thority of the probate court. Thus, the court's decision to remove or not to remove a special administratrix is appealable." *Id.* at 591. Therefore, the mother had "the right to appeal the court's denial of her petition to remove [the sister] as special administratrix." *Id.*

While Lori styled her action as a "petition to dissolve a special administration," it was essentially a petition to remove a special administrator, as in *Pope*. Therefore, for basically the same reasons as outlined in *Pope*, we reach a similar conclusion. That is, Lori has the right to appeal the trial court's denial of her petition to dissolve the special administration. Having concluded that this appeal should not be dismissed, we turn our attention to Lori's claims.

■ Citing Indiana Code Section 29–1–10–15, Lori contends that the appointment of Rita as special administrator was improper and therefore not valid because the requirements for such an appointment were not present. She further argues that the term "personal representative" in the wrongful death statute means the general administrator of the estate, that the Code only envisions two types of special representatives, and that neither is applicable to the present case. Lori asserts that she was competent, ready, willing, and able to pursue a wrongful death/worker's compensation action on behalf of her husband and step-children, and that there was no urgency requiring a special administrator. In addition, she contends that the trial judge's interpretation of the law is against public policy because it would allow a competent, complete stranger to become a special administrator if he/she merely "won the race to the courthouse." In essence, Lori argues that the mere lack of a general administration ten days after Decedent's untimely death does not justify the establishment of a special administration.

■ Indiana's wrongful death statute grants the right to maintain a wrongful death action only to the decedent's personal representative. IND.CODE § 34–1–1–2 (re-codified at IND.CODE § 34–23–1–1); *South v. White River Farm Bureau Co-op.*, 639 N.E.2d 671, 673 (Ind.Ct.App.1994), *trans. denied.*

A special administratrix is a type of personal representative who is appointed for a special purpose with limited powers and duties. She is responsible to the estate only for that portion of its affairs entrusted to her but, as to those duties, she is a fiduciary charged with acting in the best interests of the successors to the estate.

*Pope*, 701 N.E.2d at 589.

A special administratrix may be appointed by the court if:

(a) from any cause delay is necessarily occasioned in granting letters, or

(b) *before the expiration of the time allowed by law for issuing letters, any competent person shall file his affidavit with the clerk* that anyone is intermeddling with the estate or *that there is no one having authority to take care of the same*, or

(c) if any person shall have died testate and objections to the probate of his will shall have been filed as provided by law.

The appointment of a special administrator may be for a specified time to perform duties respecting specific property, or to perform particular acts as shall be stated in the order of appointment.

\* \* \*

Otherwise, and except as the provisions of this article by terms apply to general personal representatives, and except as ordered by the court, the law and procedure relating to personal representatives in this article shall apply to special administrators. The order appointing a special administrator shall not be appealable.

IND.CODE § 29–1–10–15 (emphases added).

■ The trial court has "complete discretion" in the appointment of special administrators. *Matter of Estate of Sandefur*, 685 N.E.2d 719, 723 (Ind.Ct.App.1997). A trial court may appoint "any competent person" under the circumstances described in the probate code. *Id.* In view of the highlighted language of Indiana Code Section 29–1–10–15 as well as our opinions in *Sandefur* and *Pope*, we disagree with Lori's argument that the requirements for the appointment of a special administrator were not present.

In the present case, ten days after Decedent's death, Rita filed her verified petition with the clerk. In that petition, she stated, *inter alia:*

> 5. The decedent left surviving him as his only dependent heirs at law the following:
>
> > (a) Lori Hutman, who is the decedent's subsequent childless spouse and who resides at _____, Valparaiso, Indiana.
> >
> > (b) Tosha Lynn Hutman, age 14; John James Hutman, age 12; and Jessica Marie Hutman, age 10; all of who are the decedent's surviving minor children and all of whom reside with their mother, Suzanne Marie Hutman, at _____, Wilmington, Illinois.

The aforementioned represent all of the persons to whom any worker's compensation benefits and wrongful death damages would inure.

> 6. It is believed that the decedent died intestate leaving no significant real or personal property upon which administration is necessary. It is further believed, based on a search of the Porter County Clerk's records, that no administration of the decedent's estate is pending and that no general personal representative has been appointed over the decedent's estate.
>
> 7. The petitioner is interested in the estate of the decedent by reason of being his natural mother and the natural grandmother of the decedent's minor children, that she has an interest in obtaining the maximum possible recovery for the benefit of all of decedent's dependent heirs as a result of decedent's death and that she would be a suitable person to pursue any wrongful death claims and worker's compensation benefits which may be due as a result of decedent's death.

Record at 5–6. That is, before the expiration of the time allowed by law for issuing letters, Rita filed her verified petition with the clerk alleging that there was no one having author-

ity to take care of Decedent's estate, but that she could fill that role. Accordingly, Rita met the requirements of Indiana Code Section 29–1–10–15(b).

■ We disagree with Lori's argument that the term "personal representative" in the wrongful death statute means the general administrator of the estate.[1] Indiana Code Section 29–1–10–15 "has been held to authorize a probate court to appoint a special administrator for the sole purpose of pursuing a wrongful death action." *Pope,* 701 N.E.2d at 590 (citing *Sandefur,* 685 N.E.2d 719 and *South,* 639 N.E.2d at 671).

We are equally unpersuaded by Lori's assertion that because she was competent, ready, willing, and able to pursue a wrongful death/worker's compensation action on behalf of her husband and step-children, she should be the special administratrix. While there is no evidence that Lori could not have satisfactorily performed the task of special administrator, there is likewise no evidence that Rita will not adequately perform that task. The difference is Rita filed her petition first. Regarding Lori's correlated contention that there was no urgency requiring that a special administrator be appointed so quickly, we agree in part. We agree that no exigency presented itself. However, Indiana Code Section 29–1–10–15 does not demand that urgency be shown and we will not read such a requirement into the statute.

■ In addressing Lori's argument that the trial court's interpretation of the statute is against public policy, we again look to *Pope*. In pursuing a wrongful death action on behalf of a statutory beneficiary, the special administratrix serves as a trustee. *Pope,* 701 N.E.2d at 592. "For this reason, the trial court has a duty to assure itself that the administratrix will act with the utmost loyalty and impartiality." *Id.* No one can serve as a special administratrix whom the trial court finds unsuitable. IND.CODE § 29–1–10–1(b)(5). A person may be deemed unsuitable by reason of an interest in pending litigation,

---

1. We note that funds collected as a result of any wrongful death action beyond "reasonable medical, hospital, funeral and burial expense" are not an asset of the decedent's estate. They inure to the exclusive benefit of the widow and dependent children. IND CODE § 34–23–1–1; *see American Nat. Bank and Trust Co., Admr. v. Hines,* 143 Ind.App. 217, 239 N.E.2d 589 (1968), *trans. denied.*

or bias or prejudice, that is, circumstances where the appointment would be adverse to the interest of the estate to be served by the appointment. *Pope*, 701 N.E.2d at 592–93.

[I]t is the duty of judges exercising probate jurisdiction to evince vigorous and aggressive honesty in dealing with guardians, administrators, and other trustees, to the end that the trusts reposed in them shall be executed with scrupulous integrity, and that complete confidence may prevail. If that duty is faithfully discharged, no one interested in this estate will ultimately have any reason to complain of the appointment made.

*Haughey v. Haughey*, 73 Ind.App. 318, 320, 127 N.E. 454, 455 (1920).

■ What we glean from both *Pope* and *Haughey* is that the determination of who becomes a special administrator does not rest solely upon who wins the proverbial race to the courthouse. Rather, the person chosen must also be qualified under the statute. In addition, the trial court must have confidence that the person will demonstrate the utmost loyalty, impartiality, and integrity, and that the person does not have an interest in pending litigation, or bias or prejudice, such that the appointment would be adverse to the interest of those to be served by the appointment. Therefore, although a trial judge has virtually complete discretion in the appointment of special administrators, that discretion does have some guidelines. The aforementioned guidelines should prevent the appointment of complete strangers as special administrators in the vast majority of cases.

Here, there was no allegation that Rita was incompetent or that at the time she filed her petition, a general estate had been opened. *Cf. Sandefur*, 685 N.E.2d at 723. Thus, there was no one having authority to take care of the estate. Since any damages awarded for Decedent's death would be distributed 50% to Lori and 50% to the children of Decedent and his first wife, Lori's interest is no greater than that of Decedent's children. Indeed, Lori's interest may even diverge from that of children which were born to and reside with Decedent's first wife. Considering the potential for competing interests between Decedent's second wife and the children from Decedent's first marriage, the appointment of Rita seems quite sensible. As Decedent's mother, the children's grandmother, and the mother-in-law to both Lori and Decedent's first wife, Rita may be one of the most neutral potential special administrators. We see no error.

Affirmed.

BAKER, J., concurs.

ROBB, J., concurs in result and files separate opinion.

ROBB, J., concurring in result.

I respectfully concur in result.

The legislative provisions governing this situation allow a race to the courthouse. A better procedure would be to hold a hearing after a personal representative is appointed to determine if removal of the special administrator is appropriate. The trial court could then review the duties and qualifications of each and the propriety of the respective appointments. Absent an explicit direction from the legislature, however, the court was under no obligation to do so.