FILED
Jul 13 2018, 9:29 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Daniel J. Zlatic
Rubino, Ruman, Crosmer & Polen
Dyer, Indiana

ATTORNEY FOR APPELLEE
KATHY CALLOWAY

Edward A. McGlone
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE
SHANA TOLIVER

Nathaniel Lee
Jennifer Lee
Faith Alvarez
Lee Cossell & Crowley, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Unsupervised Estate of Orlando C. Lewis, Jr., | July 13, 2018 |
| Orlando Lewis, Sr., | Court of Appeals Case No. 41A01-1712-EU-2893 |
| *Appellant-Petitioner,* | Appeal from the Johnson Superior Court |
| v. | The Honorable Kevin M. Barton, Judge |
| Shana Toliver and Kathy Calloway, | Trial Court Cause No. 41D01-1707-EU-179 |
| *Appellees-Respondents.*[1] | |

---

[1] We note that Lewis, Sr. originally, and incorrectly, brought this appeal as the Special Administrator of the Estate of Lewis, Jr., and Toliver raised this issue in her motion to dismiss which we discuss below. *See* note 4, *infra*. However, this is a technicality that we have remedied by editing the caption accordingly. *See Auditor of*

**Mathias, Judge.**

Orlando Lewis, Sr. ("Lewis, Sr.") appeals the Johnson Superior Court's order rescinding his appointment as the special administrator for the estate of his son Orlando Lewis, Jr. ("the Estate").

We affirm.

## Facts and Procedural History

Lewis, Sr. is the father of Orland Lewis, Jr. ("Lewis, Jr."). Lewis, Jr. had two children—Son J.T., born in 2011 to Shana Toliver ("Toliver") and Daughter K.L., born in 2015 to Lewis, Jr.'s wife Shante Lewis ("Shante"). Toliver and Lewis, Jr. shared custody of Son J.T. with Toliver having primary physical custody.[2]

On July 22, 2017, a commercial bus owned by Miller Transportation, Inc. ran into the back of a stopped vehicle occupied by Lewis, Jr., his wife Shante, Daughter K.L., and Shante's mother Rose Ann Pettus ("Rose Ann") on a highway in Monroe County. Daughter K.L. was the only survivor. Aside from Daughter K.L., Lewis, Jr. was survived by his father, his mother Sharon Norals, and Son J.T.

_____

*Owen County v. Asset Recovery, Inc.*, 991 N.E.2d 984, 986 (Ind. Ct. App. 2013) (explaining that "justice should not be defeated by technicalities.").

[2] Son J.T. is also medically disabled. His mother explained that he "has ADHD combined type, ODD[] [which is] oppositional defiant disorder, expressive receptive language disorder, speech delays, developmental delays, and mild intellectual disabilities." Tr. pp. 90–91.

[5]     After the accident, Shante's aunt and Rose Ann's sister Kathy Calloway ("Calloway") rushed to the hospital where Daughter K.L had been taken for treatment of her broken leg and other injuries. There, Calloway learned that Daughter K.L. was the only survivor, and after speaking with a caseworker from the Department of Child Services and completing the paperwork provided by that caseworker, Daughter K.L. was released from the hospital and into Calloway's care. Subsequently, Calloway filed for and was appointed as Daughter K.L.'s temporary guardian on August 14. And at the time of the events underlying this appeal, Calloway was awaiting a February 2018 hearing to become Daughter K.L.'s permanent guardian.

[6]     Three days after the accident, on July 25, Lewis, Sr., who at all relevant times has lived in Illinois, filed a petition for appointment as special administrator for the sole purpose of pursuing damages for the wrongful deaths of Lewis, Jr. and Shante in the Johnson Superior Court. The trial court granted Lewis, Sr.'s petition, and he was issued Letters of Administration on August 1.[3]

[7]     The very next day, on July 26, Son J.T.'s mother Toliver filed her own petition for appointment as special administrator for the Estate in the Marion County Superior Court. The court appointed Toliver as the special administrator on July 27 and issued letters of administration. The Marion Superior Court

---

[3] Although Lewis, Sr. was initially appointed as the special administrator of Shante's estate for pursuing damages for her wrongful death, Shante's father Dante Pettus subsequently filed a motion for substitution of special administrator in Shante's estate. Lewis, Sr. then voluntarily withdrew as the special administrator of Shante's estate. Shante's estate is not at issue in this appeal.

subsequently learned that Lewis, Sr. had filed his petition in Johnson County prior to Toliver's petition, and thereupon, the Marion Superior Court stayed its proceeding pending a determination of venue in the Johnson Superior Court.

[8] On August 28, Toliver filed a petition to intervene in the Johnson County proceedings and a motion to remove Lewis, Sr. as special administrator of the Estate. On August 30, Calloway filed a similar petition to intervene, and on September 6, Calloway filed a motion asking the trial court to reconsider its appointment of Lewis, Sr. as special administrator of the Estate or to remove him. Both Toliver and Calloway argued in their motions that they should be appointed co-special administrators of the Estate because they are the legal guardian and court-appointed guardian of Lewis, Jr.'s two dependent children respectively.

[9] On October 12, 2017, the trial court held a combined hearing in which it heard argument and evidence on all motions pending before it regarding the estates of both Lewis, Jr. and Shante. On December 4, the trial court issued an order in which it, in pertinent part and in regards to the Estate: (1) determined that venue was proper in Johnson County; (2) explained that the beneficiaries of a wrongful death action on behalf of Lewis, Jr. are his two minor children Daughter K.L. and Son J.T.; (3) reconsidered and rescinded its prior appointment of Lewis, Sr. as special administrator and vacated the letters of administration; and (4) appointed Toliver and Calloway as special co-personal representatives of the Estate for the limited purpose of pursuing the wrongful

death claim on behalf of Daughter K.L. and Son J.T. Appellant's App. pp. 15–20.

[10] Lewis, Sr. now appeals.[4]

## Discussion and Decision

[11] Lewis, Sr. contends that the trial court abused its discretion when it rescinded its appointment of him as special administrator of the Estate. Specifically, Lewis, Sr. maintains that he was appropriately appointed as the special administrator of the Estate under Indiana Code section 29-1-10-15, and thus the trial court abused its discretion when it removed him without complying with Indiana Code section 29-1-10-6 (the "Removal Statute"). Calloway[5] argues that because the Removal Statute was not involved in the court's decision, the trial

---

[4] While this appeal was pending, Toliver filed a motion for involuntary dismissal of Lewis, Sr.'s appeal. In it Toliver argued that: (1) Lewis, Sr. was not appealing a final judgment; (2) Lewis, Sr. was statutorily barred from bringing the appeal pursuant to Indiana Code section 29-1-10-15; (3) Lewis, Sr. had no basis to appeal because the trial court reconsidered its appointment and did not remove him under Indiana Code section 29-1-10-6; and (4) Lewis, Sr. improperly brought his appeal as "special administrator" of Lewis, Jr.'s estate even though he was no longer the special administrator. We denied Toliver's motion for the following reasons. First, Lewis, Sr. is appealing the trial court's rescission of his appointment as the special administrator of the Estate, and thus, the court's order disposed of the sole claim Lewis, Sr. has with Toliver and Calloway in their current capacity as special co-personal representatives of the estate. Both our supreme court and our court have previously examined similar appeals to the one Lewis, Sr. brings here. *See In re Estate of Hammar*, 847 N.E.2d 960, 962 (Ind. 2006); *Estate of Sandefur*, 685 N.E.2d 719, 721–22 (Ind. Ct. App. 1997). As to Toliver's second and third contentions, although Indiana Code section 29-1-10-15 explains that "[t]he order appointing a special administrator shall not be appealable[,]" Lewis, Sr. is not appealing the trial court's appointment of Toliver and Calloway as special co-administrators. Rather, Lewis, Sr. is appealing the trial court's rescission of his appointment as special administrator of the Estate. And we stated in *Sandefur*, "although [I.C. § 29-1-10-15] does not allow the appeal of an order appointing a special administrator, the order removing a special administrator may be appealed by the aggrieved party." 685 N.E.2d at 722. Here, Lewis, Sr. is an aggrieved party, and he therefore has a right to appeal. Finally, we addressed Toliver's fourth argument above. *See* note 1, *supra*.

[5] Although Calloway and Toliver are special co-personal representatives of the Estate and they are both appellees on appeal, we note that Toliver did not file a brief.

court acted within its discretion when it reconsidered and rescinded its order appointing Lewis, Sr. as special administrator. Therefore, Calloway maintains that the trial court did not err when it named her and Toliver as the special co-personal representatives of the Estate. Under the particular facts and circumstances presented here, we agree with Calloway.

[12] Indiana Code section 29-1-10-15 provides that a trial court may appoint a special administrator if:

> (a) from any cause delay is necessarily occasioned in granting letters, or
>
> (b) before the expiration of the time allowed by law for issuing letters, any competent person shall file his affidavit with the clerk that anyone is intermeddling with the estate or that there is no one having authority to take care of the same, or
>
> (c) if any person shall have died testate and objections to the probate of his will shall have been filed as provided by law.
>
> The appointment of a special administrator may be for a specified time to perform duties respecting specific property, or to perform particular acts as shall be stated in the order of appointment.
>
> ***
>
> Otherwise, and except as the provisions of this article by terms apply to general personal representatives, and except as ordered by the court, the law and procedure relating to personal representatives in this article shall apply to special administrators. The order appointing a special administrator shall not be appealable.

[13] We have previously held that this statute authorizes a trial court to appoint a special administrator for the sole purpose of pursuing a wrongful death action, and that the trial court has "complete discretion" in the appointment of special administrators. *Estate of Sandefur*, 685 N.E.2d 719, 723 (Ind. Ct. App. 1997).

[14] Here, neither party argues that Lewis, Sr. was not properly appointed as special administrator under section 29-1-10-15. Rather, Lewis, Sr.'s primary argument is that the trial court had no basis to remove him as special administrator under the Removal Statute, which provides in relevant part:

> (b) When the personal representative becomes incapacitated (unless the incapacity is caused only by a physical illness, infirmity, or impairment), disqualified, unsuitable or incapable of discharging the representative's duties, has mismanaged the estate, failed to perform any duty imposed by law or by any lawful order of the court, or has ceased to be domiciled in Indiana, the court may remove the representative in accordance with either of the following:
>
>> (1) The court on its own motion may, or on petition of any person interested in the estate shall, order the representative to appear and show cause why the representative should not be removed. The order shall set forth in substance the alleged grounds upon which such removal is based, the time and place of the hearing, and may be served upon the personal representative in the same manner as a notice is served under this article.
>>
>> (2) The court may without motion, petition or application, for any such cause, in cases of emergency, remove such personal representative instantly without notice or citation.

I.C. § 29-1-10-6[6]

[15]     Because of this statutory language, a panel of this court explained in *Sandefur*
that "once the trial court has made an appointment of a special administrator, it
may not remove the administrator without a finding that the special
administrator meets one of the statutory criteria for removal." 685 N.E.2d at
722. However, the trial court here did not utilize the Removal Statute, but
instead it *reconsidered* its appointment of Lewis, Sr. as special administrator of
the estate. And, as our supreme court explained in *In re Estate of Hammar*:

> A trial court's control and discretion to change its own rulings is
> firmly established in common law, and we will review a trial
> court's reconsideration of its prior rulings for abuse of discretion.
> *Pond v. Pond*, 700 N.E.2d 1130, 1135 (Ind. 1998) ("A trial court
> may reconsider an order or ruling if the action remains *in fieri*, or
> pending resolution."); *State ex rel. Rans v. St. Joseph Superior Court*,
> 246 Ind. 74, 78, 201 N.E.2d 778, 779–80 (1964) ("[A] court may,
> upon motion to reconsider or rehear, upon its own motion or the
> suggestion of a party, vacate, set aside, amend or modify a ruling
> entered in the same term of court, since such a matter is *in fieri*.").

---

[6] Notably, because Lewis, Sr. lives in Illinois, he would not have qualified to serve as a general administrator over the Estate in his individual capacity. *See* Ind. Code § 29-1-10-1(c). And under the Removal Statute, an individual can be removed as a personal representative of an estate if he "has ceased to be domiciled in Indiana[.]" I.C. § 29-1-10-6(b). However, there is no such residence restriction under the statute governing the appointment of special administrators, *see* I.C. § 29-10-10-15, and thus, although Lewis, Sr. lives out of state and cannot serve as a general administrator of an Indiana estate in his individual capacity, the legislature has deemed it appropriate that he has the ability to serve as a special administrator of an Indiana estate—a determination that is within its province. As this case shows, it may be well for the legislature to consider the concept of the best person to represent the interests of all beneficiaries in a special administration after notice to those beneficiaries or their representatives.

847 N.E.2d 960, 962 (Ind. 2006). We have similarly noted that trial courts have the inherent power to reconsider its appointment of special administrators. *Brenton v. Lutz*, 993 N.E.2d 235, 239 (Ind. Ct. App. 2013), *trans. denied.* And as stated above, we will consider the trial court's decision here to reconsider its appointment of Lewis, Sr. as special administrator for an abuse of discretion. *Hammar*, 847 N.E.2d at 962.

[16] The trial court explained its rationale for reconsidering its original decision:

> Typically, the issue of who will serve as Special Administrator is determined by the family. Indiana does not set forth a statutory procedure to notify other potential applicants of the petition for appointment. Inasmuch as the issue is normally resolved by the family, a dispute over appointment is rare. The procedures utilized by the court allow for the expeditious appointment of a special administrator in the typical situation. Unfortunately, in this case, a family agreement was not made. The Court unwittingly rewarded the victor in the race to the courthouse without considering the claims of the rival claimants. No disclosures were made of rival claimants. The Court did not on it's [sic] own consider the interests of rival claimants.

Appellant's App. p. 13. After considering the claims of all rival claimants during the October hearing, the trial court reconsidered its original decision and relied on our supreme court's decision in *Hammar* when it rescinded its appointment of Lewis, Sr. as special administrator of the Estate. Appellant's App. p. 20.

[17] Lewis, however, contends that *Hammar* does not support the trial court's decision. In that case, Hammar was killed in an automobile accident in which

his wife Janet was also injured. Four days after the accident, Hammar's ex-wife Margaret sought and obtained permission to serve as special administrator for a wrongful death action on Hammar's behalf. The next day, Janet's attorney filed a petition to have Janet appointed as general administrator of the estate; but he discovered that Margaret had already been appointed as special administrator. Janet's attorney filed an objection with the court, and the court stayed all proceedings until a hearing could be held addressing Janet's claims.

[18] At the hearing, the trial court removed Margaret as special administrator and appointed Janet in her place. The court stated, in part, that "it erred when it appointed Margaret [] as Personal Representative of the Estate in that Janet [] as widow of the decedent is closer in proximity to the decedent and the estate." *Hammar*, 847 N.E.2d at 962 (quoting Appellant's App. p. 5). On appeal, Margaret argued that the trial court erred when it removed her as special administrator without a supporting reason under the Removal Statute. *Id.*

[19] Our supreme court rejected Margaret's argument and explained, "we view the trial court's action as a mere reconsideration of its prior ruling, not a removal of a special administrator under the removal statute." *Id.* The *Hammar* court then found that the trial court did not abuse its discretion when it reconsidered its original order, in part, because "the trial court's original order was obtained ex parte without notice to the decedent's widow, who had just been released from the hospital and was in the process of making funeral arrangements for her husband." *Id.* at 962–63. In a concurring opinion, then Chief Justice Shepard remarked, "Margaret's lawyer seized control of [] Hammar's estate for purposes

of filing a contingent fee wrongful death case at a moment when the body had barely turned cold. He contended—and continues to claim—that 'no one else was in a position to act.'" *Id.* at 963 (Shepard, C.J., concurring).

[20] Lewis, Sr. contends that *Hammar* is not controlling in the case before us because the circumstances present in *Hammar* "differ greatly from those present in the instant case." Appellant's Br. at 16. Specifically, Lewis, Sr. alleges that unlike in *Hammar*, here "the trial court . . . removed a person with a close relationship with the decedent, his father, [Lewis, Sr.], in favor of the ex-wife of decedent, Toliver." *Id*. at 17. We agree that *Hammar's* facts are different than the ones before us in this case, but *Hammar's* rationale is an equitable one, and one we believe should be applied here to find the best special administrator(s) for this estate in the face of the fragmented family involved.

[21] A special administrator has a legal relationship with the estate's personal representative that becomes extremely important in circumstances such as those before for us in this case, where the proceeds from settlement or trial of the personal injury claims of the beneficiaries will constitute nearly all of the assets of the estate. In such an estate, a special administrator's interests may actually conflict with the interests of the personal representative of the estate, for example, in the fees charged by the special administrator or the counsel chosen by that special administrator. In a case like the one before us, while consanguinity and degrees of relationship are important, they should not be controlling and should be considered along with the nature of the estate and the

best interests of all of its beneficiaries, after proper notice is given to all beneficiaries or their legal representatives.

[22] Incredibly, the special administrator statute requires no notice to beneficiaries prior to appointment of a special administrator, and neither petitioner, Lewis, Sr. in Johnson County, nor Toliver in Marion County gave such notice. And just as incredibly, after an appointment of a special administrator without notice, "[t]he appointment of a special administrator shall not be appealable." I.C. § 29-1-10-15. Any conflict between *Sandefur* and *Hammer* is caused by this untenable procedure. Notice prior to appointment of a special administrator is required as a matter of equity in order to properly and fully inform the trial court prior to appointment, and it should also be required as a matter of law.[7]

[23] Here, the only beneficiaries are Daughter K.L. and Son J.T, the latter of whom has very challenging special needs. *See* I.C. § 34-23-1-1. The "best interests" consideration in this case should turn on an assessment of personal interest in and concern for those beneficiaries, and not on a race to the courthouse or the hurried consolidation of parties by one law firm.

[24] Lewis, Sr., who won the race to the courthouse, has lived in Illinois his entire life. Son J.T. was born in 2011, and the first time Lewis, Sr. ever asked Toliver

---

[7] We respectfully request that the General Assembly reconsider the language of Indiana Code section 29-1-10-15 and create a special administrator appointment process that requires notice to beneficiaries or their representatives prior to appointment and that provides standards for the appointment of a special administrator by the trial court.

to see Son J.T. was on August 15, 2017—nearly a month after the accident. Tr. pp. 38, 73. Shante's son M.B., III[8] who lived with Lewis, Jr., Shante, and Daughter K.L., testified that Lewis, Sr. came over to the house on two occasions. *Id.* at 136.[9] And in his petition for appointment as special administrator of the Estate, in the paragraph where Lewis, Sr. lists Lewis, Jr's decedents, Son J.T. is only listed by his first name, with no last name or address. Moreover, since Daughter K.L.'s birth in 2015, Lewis, Sr. has only seen her "[a]bout four or five times." Tr. p. 49. For these reasons, we agree with the trial court's assessment that Lewis, Sr. did not "demonstrate[] a particularly close relationship with either grandchild prior to the collision." Appellant's App. p. 20.

[25] Lewis, Sr. additionally contends that "[u]nlike the appellee in *Hammar*, the appellees in this case, Toliver and Calloway, waited thirty-three (33) and thirty-five (35) days respectively before petitioning to intervene in the underlying case." Appellant's Br. at 17–18. Although this is true, a panel of this court has previously explained "that the determination of who becomes a special administrator does not rest solely upon who wins the proverbial race to the courthouse." *In re Estate of Hutman*, 705 N.E.2d 1060, 1065 (Ind. Ct. App.

---

[8] M.B., III is Shante's child from a former relationship and was eight years old at the time of the accident. Although his interests under Shante's estate are not at issue in this appeal, we find portions of his testimony relevant to our decision.

[9] It is unclear from the record whether Son J.T. was present at the time of these visits.

1999). Our facts here demonstrate an important reason not to blindly rely on such a race.

[26] Moreover, we note that Lewis, Sr. filed his petition to be appointed special administrator just three days after the accident and nearly a week before Lewis, Jr.'s funeral. *Cf. Sandefur*, 685 N.E.2d at 720 (individual appointed as special administrator filed her petition for appointment thirteen days after decedent's death). The trial court addressed the issue of timing in its order quite well when it stated, "While longer than the one day in [] *Hammar*, no evidence is presented that the competing claimants did not act with reasonable promptness in asserting their claims." Appellant's App. p. 14.

[27] It is precisely because of Lewis, Sr.'s race to the courthouse "that the circumstances of appointment did not permit all interested parties to have an opportunity to seek appointment." *Id.* at 20. Neither Toliver (Son J.T.'s mother and legal guardian) nor Calloway (Daughter K.L.'s caretaker and temporary guardian) had any notice that Lewis, Sr. was filing his petition. *See Pope by Smith v. Pope*, 701 N.E.2d 587, 593 (Ind. Ct. App. 1998) (holding that although petitioner seeking to be appointed special administrator "was not required to name the persons most closely related by blood or marriage to the sole statutory beneficiary," it was incumbent on the petitioner or her attorney to inform the court that the only minor beneficiary was in the custody of his natural mother).

[28] It is also quite concerning that during the time period covering the proceedings underlying this appeal, Lewis, Sr. filed suit against both Toliver and Calloway.

*See* Tr. pp. 40, 51, 52, 73, 186; *cf. Hutman*, 705 N.E.2d at 1065 (finding that decedent's mother would be a neutral special administrator due to potential competing interests among other petitioners). Although Lewis Sr.'s lawsuits are for grandparent visitation rights, it is notable that prior to the accident, Lewis, Sr. had seen Son J.T., age six, and Daughter K.L., aged two and one-half, fewer than ten times combined. Thus, although we acknowledge the difference in timing between *Hammar* and the case before us, it is not dispositive. Rather, what is persuasive is the underlying concerns of the *Hammar* court that are also present here. *See Hammar*, 847 N.E.2d at 963 (Shepard, C.J., concurring).[10]

[29] We have previously explained that when appointing a special administrator, "the trial court must have confidence . . . that the person does not have an interest in pending litigation, or bias or prejudice, such that the appointment would be adverse to the interest of those to be served by the appointment." *Hutman*, 705 N.E.2d at 1065. Here the trial court noted, "[t]he circumstance that so many people with ties to Orlando Lewis, Jr. . . . ended up at the same law firm within a short period after death is disquieting. While diligence and promptness are virtues[, r]epresentation of the interests of the minor beneficiaries should not be accorded to the victor in the race to the courthouse alone to the disadvantage of other parties when other parties have not had an opportunity to assert their claim." Appellant's App. p. 20. We agree, and it is

---

[10] We acknowledge that Lewis, Sr. lists more purported differences in circumstances between *Hammar* and the case before us, *see* Appellant's Br. at 18–19; however, those differences are unavailing, and we decline to address them.

for these reasons that trial courts are afforded the ability to reconsider prior rulings as long as the action remains *in fieri*.

[30] Therefore, based on the facts and circumstances before us, we view the trial court's action rescinding Lewis, Sr. as special administrator of the Estate as a mere reconsideration of its prior ruling, and not a removal of a special administrator requiring application of the Removal Statute. And because of the trial court's inherent power to reconsider its appointment of a special administrator, we conclude that it did not abuse its discretion when it revised its appointment of Lewis, Sr. to Toliver and Calloway as special co-personal representatives.

## Conclusion

[31] The trial court did not abuse its discretion by reconsidering its appointment of Lewis, Sr. when important new facts came to its attention, and we affirm its order replacing Lewis, Sr. with Toliver and Calloway as special co-personal representatives for the wrongful death action on behalf of the Estate.

Riley, J., and May, J., concur.